F I L E D
Clerk
District Court

JUL 2 5 2005

For The Northern Mariana Islands
By_____
(Deputy Clerk)

LEONARDO M. RAPADAS
United States Attorney
TIMOTHY E. MORAN
Assistant U.S. Attorneys
DISTRICT OF THE NORTHERN
   MARIANA ISLANDS
Horiguchi Building, Third Floor
P.O. Box 500377
Saipan, MP 96950
Telephone: (670) 236-2982
Fax:          (670) 236-2985

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN MARIANA ISLANDS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No.: 04-00009 |
| | ) | |
| Plaintiff, | ) | Trial: Jury |
| | ) | Date: August 8, 2005 |
| v. | ) | Time: 9:00 a.m. |
| | ) | Judge: Hon. A. Wallace Tashima |
| VANN LE, | ) | |
| | ) | GOVERNMENT'S MOTION IN LIMINE |
| | ) | TO ADMIT DEFENDANT'S |
| Defendant. | ) | STATEMENTS TO SEPARATED SPOUSE |
| | ) | |
| | ) | |
| _____ | ) | |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Leonardo M. Rapadas, United States Attorney, and Timothy E. Moran, Assistant United States Attorney, and hereby moves in limine to admit statements made by the defendant to his separated spouse. Because the statements were made after the defendant and his spouse had all but formally ended their marriage, such statements are not covered by the marital communications privilege.

In this case, the Government alleges that the defendant conspired with two accomplices to rob the Citytrust bank in Saipan, CNMI. The defendant did not enter the bank himself but planned and assisted in the robbery. Following the robbery, the defendant traveled to Japan, where he saw his

separated wife, Yuki Higuchi. The defendant admitted his involvement in the conspiracy and responsibility for the robbery to Ms. Higuchi. Prior to this confession, and the Citytrust bank robbery, the defendant and Ms. Higuchi had permanently separated. The Government intends to call Ms. Higuchi and offer those statements.

The Government intends to introduce evidence that Ms. Higuchi met the defendant in February 2000 as a student visiting from Japan, moved to Saipan in August, 2000, and married the defendant in November, 2000. Ms. Higuchi became involved in the defendant's business, a marine sports rental business, and borrowed $20,000 from her father to invest in the business. However, their marriage quickly broke down due to the defendant's extra-marital affairs. The defendant and Ms. Higuchi separated in October, 2001, following an argument between the defendant and Ms. Higuchi during which he discarded his wedding ring. Ms. Higuchi then returned to Japan. Before the robbery occurred, Ms. Higuchi visited Saipan once, in January 2002, to see her dog, stayed at a hotel and spoke to the defendant only about their business. The defendant's appearance in Japan on April 19, 2002, surprised Ms. Higuchi, as he had not told her that he was coming and did not expect him. They met at the Nishikoyama train station in Tokyo and argued briefly before he left to meet another girlfriend. Ms. Higuchi did not invite the defendant, nor did he request, to stay with her. Later, after the defendant fled the jurisdiction, Ms. Higuchi returned to Saipan to attend to the business. Ms. Higuchi considers herself permanently separated from the defendant; she has not formally divorced the defendant because of her CNMI immigration status as an immediate relative.

Because the defendant and Ms. Higuchi were permanently separated when the defendant made his statements to her, the marital communications privilege does not apply.[1] United States v. Roberson, 859 F.2d 1376, 1381 (9th Cir. 1988); United States v. Marashi, 913 F.2d 724, 730 (9th Cir. 1990). The

---

[1] A different privilege, the spousal testimonial privilege, permits a witness to refuse to testify against his or her spouse. Trammel v. United States, 445 U.S. 40, 53 (1980). The witness spouse alone may exercise that privilege. Id.; United States v. Montgomery, 384 F.3d 1050, 1056 (9th Cir. 2004). In this case, Ms. Higuchi is willing to testify against the defendant, so that privilege does not apply.

2

marital communications privilege applies only to (1) communications; (2) made during a valid marriage; and (3) which are confidential. Marashi, 913 F.2d at 729-30. A permanent separation, even if the marriage still exists legally, contradicts the second criterion.

The marital communications privilege must be narrowly construed "because it obstructs the truth seeking process. Use of the privilege in criminal proceedings requires a particularly narrow construction because of society's strong interest in the administration of justice." Marashi, 913 F.2d at 730; see also United States v. Nixon, 418 U.S. 683, 710 (1974). The privilege is intended to insure that spouses may "communicate their deepest feelings to each other without fear of eventual exposure in a court of law." Roberson, 859 F.2d at 1380, citing United States v. Byrd, 750 F.2d 585, 590 (7th Cir. 1985). This interest is balanced against society's interest in truth and the administration of justice. Id. Society's interest in truth and justice outweighs society's interest in protecting the confidentiality of a *failed* marriage – including a marriage whose spouses have permanently separated but not yet divorced. Id.[2]

The Ninth Circuit considered this issue in Roberson, which upheld the Government's introduction of a confession that the defendant made to his wife after he had instituted divorce proceedings, moved out of the home, and been the subject of a temporary restraining order. 859 F.2d at 1377. Notwithstanding the defendant's still legally valid marriage at the time of the statement, the privilege did not apply because the couple were separated with no hope of reconciliation. Id. at 1381. This position is consistent with Ninth Circuit precedent and other circuits. See United States v. Lustig, 555 F.2d 737, 748 (9th Cir. 1977) (privilege inapplicable where defendant's common law "relationship had been terminated with no chance of reconciliation"); Byrd, 750 F.2d at 588 (privilege inapplicable where defendant and his wife had been separated for a year and lived in different homes); In re Witness

---

[2] The Ninth Circuit recognizes other limitations on the marital communications privilege where society's interest in truth outweighs one spouse's desire to keep marital communications confidential. See Marashi, 913 F.2d at 730 (privilege does not apply to communications pertaining to future crimes in which both spouses participate); United States v. White, 974 F.2d 1135, 1138 (9th Cir. 1992) (the "marital communications privilege should not apply to statements relating to a crime where a spouse or a spouse's children are the victims").

3

Before Grand Jury, 791 F.2d 234, 238 (2d Cir. 1986) (denying privilege to witness who refused to answer questions about her husband before grand jury where witness had not lived with husband for 11 years and husband had fathered a child by another woman).

Where application of the marital communications privilege is contested, Roberson directs the District Court to find first that the husband and wife were separated at the time of the communication. Then the Court should "undertake a more detailed investigation into in the irreconcilability of the marriage. It should consider all other relevant circumstances," including the length of separation and stability of the marriage. Roberson, 859 F.2d at 1381. The Government bears the burden of proving inapplicability. See Marashi, 913 F.2d at 730. Here, the Government will introduce evidence that defendant and Ms. Higuchi were separated at the time of the statement. In addition, the evidence will show that this separation was permanent: the marriage was not strong from the outset; the defendant continued to pursue other relationships, with his wife's knowledge, before and after the separation; the spouses soon chose to live in different countries; when they were occasionally in the same place, neither wished to reside with the other; and Ms. Higuchi refused to return to Saipan until the defendant had left. Ms. Higuchi has not sought to divorce the defendant only because of her immigration status. However, as the district court found in Roberson, a legal formality should not prevent a finding that the marriage is effectively "defunct." 859 F.2d at 1378.

Furthermore, the circumstances under which these statements were made demonstrate that they are inconsistent with a spouse seeking to confide in a wife to whom he is still married. The defendant made no attempt at secrecy and confessed to Ms. Higuchi at the Nishikoyama train station, where he could have been overheard by any number of bystanders. The presence of third parties renders the privilege inapplicable. See Pereira v. United States, 347 U.S. 1, 6 (1954) (statements in the presence of third parties not confidential or protected by privilege); United States v. Lefkowitz, 618 F.2d 1313, 1318 (9th Cir. 1980) (statements not confidential when third parties might overhear); Marashi, 913 F.2d at 730 (privilege "does not extend to statements made before, or likely to be overheard by, third parties"). In

addition, he went straight from this argument to meet with another girlfriend and did not stay with Ms. Higuchi. Under these circumstances, the Court should find that the separation was permanent and the privilege accordingly inapplicable.

For the reasons stated above, the Government requests that the Court (1) permit the Government to make an offer of proof regarding the defendant's separation from Ms. Highuchi; and (2) admit the defendant's statements to Ms. Higuchi into evidence.

                                             LEONARDO M. RAPADAS
                                             United States Attorney
                                             Districts of Guam and the NMI

Date: 7/25/05                        By:        /s/ Timothy E. Moran
                                                                   TIMOTHY E. MORAN
                                                                   Assistant United States Attorney